Our third argument of the morning is in Appeal No. 25-3131, Dupont Water Company v. City of Madison. This Court should reverse the District Court's summary judgment order for two reasons. First, when the evidence is viewed in a light most favorable to Dupont, the evidence is that Dupont designated evidence on each element of the pipes in the ground test under 1926b. Second, Dupont can provide service to the county jail within 7 to 90 days. And finally, the county never requested service at the jail. Those facts in a light most favorable to Dupont dictate that the District Court should have denied summary judgment. Second, the defendants did not create a genuine issue of material fact as to whether Dupont has made service available to the county jail. Dupont can undisputedly serve the county jail in one of three ways. Dupont denies that there was ever a request for service, and that is entirely consistent with the meeting minutes from the county, which show that they voted to receive service from Madison, and there is nothing in the meeting minutes that reflect any request for service from Dupont. They cannot contradict the meeting minutes through affidavits in this litigation, and therefore, this Court should direct entry of summary judgment in favor of Dupont. Mr. Dick, does Dupont have a legally defined service area in Indiana? Nonprofit water utilities do not, Your Honor. And in this case, though, the pipe, Dupont had a pipe on the property. Yeah, but there's not like an Indiana law like there is in some states that sort of delineates the service area that Dupont can sort of reach. Correct, Your Honor. No, in that regard, it's not a defined service area. And so under the Pipes and the Crown test, it's whether they can provide service within a reasonable time of the request. Now that Madison, in contrast— Okay, so then on your view, what are the geographic limits on Dupont's monopoly rights, right? So if Dupont just keeps building pipes that can physically serve a new area, does Dupont then get legal monopoly rights over that area by virtue of its having pipes adjacent to it? Your Honor, if this was a case where they're going way out from areas where they currently serve, then there are cases that have said that, you know, you can't use it as a sword and a shield. But in this case, Dupont had a pipe on the ground, serves the property next to it, the Frito-Lay, which is only 400 feet away. And so this is not a situation—and Dupont has had the pipe on the jail property for many, many years. So this is not a situation where Dupont is reaching out to try to serve in areas that it didn't previously serve. And Dupont and Madison also have a contract where it recognizes, you know, that Madison can serve certain users north of Hutchinson Lane. And so this is not a situation here where Dupont is trying to reach out to some far-flung place and try to serve a new user. And under the pipes-on-the-ground test, there is definitely an issue, in my opinion, for the jury as to whether Dupont can serve the jail property. It can serve undisputedly in one of three ways. It can serve in the light most favorable to Dupont in 7 to 90 days of a request for service. And the Dupont board members were very adamant that there was never a request for service. And I think what's telling and what a jury could decide is Dupont's recollection of what occurred is entirely consistent with the written record. You look in January of 2021, Dupont sends a letter to the county and says, we are your service provider under 1926B. What does the county do in response? We see it in their March meeting minutes. What happens next is they say, well, we're going to ask Madison and Dupont about their water rates. And they send two letters out. And one of the letters is very revealing, the one that went to Madison. It stated, there has been discussions on which water company will supply water to the Jefferson County Jail. And they send a letter out to Dupont also asking for their water rates. Under 1926B, a customer does not get to shop for rates and find the utility that's going to give them the best deal. And the commissioner comes to Dupont's board meeting in March of 2021. And the Dupont board members are clear, no request for service, no request for an implementation plan. And you don't see there's no request for implementation plan in that letter that they sent to Dupont. And during that meeting, there's no request. The discussion is about rates. So when you say there's no request, in your view or your client's view, is there a requirement that there needed to be a formal application filled out? The Dupont does have an application. And you need to become a member before you can become a Dupont customer. But in this case, the Dupont board, their view and their testimony is there was no request. It's not just there wasn't an application. But they didn't request it at all. So does that mean the request didn't necessarily have to be on like a preprinted form? It could have been oral? I mean, I guess if they had come to the board and had requested service and the board had agreed to allow them to be a member, then, yeah, they could have perhaps done it by some other method other than filing a written application. But the board is clear that that did not occur. And that can also be seen. So your position is it's not as reductionist or something as you saying, yeah, there's this preprinted form. I don't see it in the record. Correct. There's this preprinted form. And that's kind of a magic form. And they never filled it out. And therefore, there's no request. That's not your position. No. And the board member testified they didn't fill out an application. We require it. But their testimony goes beyond that. There was no request at all in this case. And there was no request at the board meeting. And that can really be seen in May of 2021. Two things happen. First, May, early May, the county council holds a meeting and they vote to take service from Madison or that they favor taking service from Madison. That vote occurs later in May. DuPont sends a letter to the county and unequivocally states again, you're in our service area. We want to serve you. And they even say you can take at our current rates. And so that letter to me says two things. First of all, both January and May of 2021, it's very clear it's highly consistent with DuPont members' testimony and affidavits. There was never a request. These letters are very consistent with their testimony that there had been no request. It seems so odd to me. I'll just tell you my impression. I know you're going to disagree with it. But I want to hear why. Okay. When I read, when I, you guys both, the way the briefs are set up is the brief tells the whole narrative of everything that happened here. It's a long and drawn out thing. There's all kinds of back and forth over a period of time. I thought for sure that DuPont was going to say, of course there was a request. What do you think all this back and forth is about? We're not just talking, we're not talking to them about water for the heck of it. We're talking to them about water because we're actually in the water business. We supply water. And more than that, we think we actually have a legal monopoly to supply water to the jail. And so when I get to your argument section, I do an about face. I'm like, hold on. They're arguing there's no request? What is all this back and forth about? I don't get it. Yes, Your Honor. The board members from DuPont, what occurred is there were discussions. It almost seems like DuPont dropped the ball. That's like the, I don't know where, maybe a manager rank or somebody. But I keep thinking there's a jail project going on. DuPont wants the business. It's not indifferent to whether, I don't think you are, are you? No. DuPont wants to serve. DuPont was clear that. And then they come in with this position. There's been no request? What are all these meetings about? Yes, Your Honor. And the testimony is clear that there were discussions that had occurred. But there was never any request to DuPont to serve. And the board members. Well, wasn't it implicit in all of the back and forth that we, DuPont, want to supply the water? Right? Correct. If you go to XYZ Company to supply the water, we're telling you right now there's going to be a problem. Correct. Because we hold a monopoly. Correct. So the request is implicit in everything. I mean, I would say there is definitely a demand on DuPont's part that they needed to get service from DuPont rather than from Madison. But DuPont didn't have an obligation to go build potentially a $600,000 water main when the customer has not even requested service from them. And I also, there was, once DuPont has sent multiple letters saying you are our customer, and then the customer goes and receives service from somebody else, there's nothing. I mean, DuPont did. I would agree with Your Honor if they are, for example, if there weren't the letters in there from DuPont to the county saying we are your service provider, you need to receive service from us, maybe that would be the situation. But I don't know what DuPont is supposed to do in a situation where they have twice notified the customer. And I think the court's decision in Jennings Water is instructive in this because in Jennings Water, the customer, the federally indebted utility, told the customer, basically, we don't want you. And so the customer went out and got a contract with a city, and they started actually building the pipe. And this court said essentially no. They took water from the city at its own peril. And in this situation, DuPont, the board members are clear that there was never a request for service from the county. And they put them on notice that we are your service provider, and therefore when the county voted to go take service from Madison because it had better rates, they were doing that at their own peril. And so I think it's clear in this case, and I'm not aware of any case under 1926B that essentially would hold that the federally indebted utility has to go out and essentially beat the bushes to try to drum up business. And I'm not sure what they were supposed to do, go start building the pipe when the customer hasn't even said that they want service and potentially end up with a pipe that goes to nowhere? What's really odd, the jail's being constructed, right? Yes. There's no world where they're going to construct a jail and operate a jail without water. Correct, Your Honor. Zero. And your client holds a legal monopoly. Correct, Your Honor. Why don't you just present them a contract and say, hey, we're about ready to put shovels in the ground, and we got little pipes and we need bigger pipes. Yes, Your Honor. And we're about ready to do that here. Sign here are the terms and conditions. The whole thing, it just has an air of, like, unreality to it. Your Honor, I would suggest that that is where this is for a jury to decide, that DuPont sent two letters and said we are your service provider. DuPont's testimony is clear that when they came to the meeting, there's no request for service. You're not going to see any request in writing. What you're going to see is that they vote to take service from the county. And so the jury could certainly credit the DuPont board member's testimony and say, you know what? We don't think they requested service. We think they were price shopping because that's what the written correspondence shows, that they wanted to get a better rate, and they're not allowed to do that. And the jury could also conclude DuPont's board members, or they offered to make service available. The customer didn't want it. They wanted a better rate. And that's something that 1926B is not allowed to do. And I can answer your question right now, but save for rebuttal. Okay. Yeah, very well. You've got time left. Okay, Mr. Morgan, nice to see you. Thank you, Judge Scudder, and may it please the court. I'd like to first talk about a few of the points DuPont is making about why we and to explain why we think the district judge's order should be affirmed on its own terms because we don't think the court has to go beyond that to resolve this appeal. But then in the back half of my argument, I do want to talk just briefly about why we think, if the court disagrees with us, that it can and should invoke Circuit Rule 40E to overturn the Jennings-Water decision. To start with the question, I'll start right where DuPont did with their January 2021 letter. That letter asserted, quote, the absolute right to be the exclusive seller of water to the jail. And it didn't direct the county, so you need to use some magic words to request service. It didn't say, so you need to fill out some application that appears nowhere in the record. It said, we're your water provider, so put your engineers in contact with us. And the county did exactly what DuPont directed. For two years, the county's engineers and various county officials attempted to coordinate service at the jail. And the critical point that DuPont doesn't mention is that the county actually connected the jail to DuPont's service. So whatever they think, whatever in their minds is the trigger for a request for service, it obviously happened here because the jail was actually connected to DuPont's service during construction because their three-inch line was sufficient for construction. Their only answer to that is to say, well, that was in the deposition testimony. And this is at docket 97-3 at page 36. Their only answer is to say, well, that was the construction company that asked. But they don't just say that. They say it was DLZ. It's the exact same engineering firm that had reached out to them in October of 2020 to say, hey, the jail needs a six-inch domestic service line. Is that a problem for you? It was the county's very same engineers that were asking them about the long-term service. So whatever in DuPont's mind a request for service is, it had to happen here because we know that DuPont connected the jail to its service. And so the question under Section 1926B is whether something happened that required DuPont to figure out, hey, can we get a six-inch service line to you? And DuPont, by its own admission, knew that unless the city of Madison was going to allow it to simply stick a DuPont meter on Madison's infrastructure, Madison's 12-inch water main, that they had to hire an engineer to figure out both the feasibility of getting a six-inch line to the jail and the timeline. That's in the record at docket 97-5 at page 23. It's DuPont Board Chair Doug Hobbs' own testimony. They knew that they were going to need an engineer to figure out not how they could serve it, whether they could actually feasibly get a water line to the jail, and they waited three years to even take the first step to answering that question. At that point, the jail was already built. This isn't a record of price shopping. Even after the county found out in, I think it was May of 2021, that Madison's rates were substantially cheaper, it didn't turn to Madison for water. It spent another 18 months trying to coordinate service from DuPont. It was only on the eve of completing construction, and again, it actually connected the jail to DuPont service, only on the eve of finishing construction, where it either had to leave this jail it had just built vacant or find water somewhere, only then did it actually turn to Madison for water. Now, that's all before we even talk about that October of 2020 email that the county's engineers sent to DuPont that said, look, we need a six-inch domestic service line. Is that a problem for you? Can you do it? Their only response to that on appeal is to argue that that exhibit was hearsay, and they certainly moved the district court to strike that exhibit from the summary judgment record, but they admit that Judge Barker didn't strike it. In fact, she recites that at page A7 of the short appendix. It's in her order. That exhibit is part of the summary judgment record that the district judge held to preclude a reasonable jury from finding that DuPont made service available in a reasonable time, and their opening brief doesn't argue that failing to strike that exhibit was an error. It doesn't make any hearsay argument at all. Had they raised a hearsay argument, we would have marshaled in our Appelese brief authorities like this court's decision in the United States against love, which holds that questions cannot be hearsay because questions are not statements and therefore cannot be statements for the truth of the matter asserted under Rule 802. We would have marshaled authorities like this court's decision in the United States against fluker, which holds that emails can be authenticated without witness testimony based on things like appearance and contents and header information and the like. We would have marshaled the record in this case of circumstantial evidence of authenticity here, which candidly is quite a bit more than the court accepted in fluker. But we didn't have a reason to do any of that in our Appelese brief because they never raised a hearsay argument in their opening brief. If there aren't other questions on the record and on Judge Barker's order as written, I'd like to transition to the Jennings-Water question. And I'd like to start with the waiver issue because we agree with DuPont that a pure question of law is not, in this court's words, an express ticket to appellate review of an argument that was not raised below. But we have this court's en banc decision in Hively that talks about a far more specific circumstance, the very narrow circumstance that we have here. And that is where you have a purely legal argument and you have binding precedent that would have foreclosed the district court from agreeing with that argument. And that rule makes good sense because in that narrow circumstance, you don't have concerns about fairness to the district judge. Had we raised this argument below, everyone agrees Judge Barker couldn't possibly have accepted it because it is squarely foreclosed by Jennings-Water unless and until this court overturns Jennings-Water. But we also don't have concerns about judicial economy. There's no judicial economy advantage to requiring the parties in the district court to wrestle with the question that the district court is powerless to decide whether Jennings-Water should be overturned. Now, DuPont's answer to that is to say that Hively is really about pro se status. But we know that's not right for at least three reasons. First, that's not what Hively says it's about. Second, that's not what this court says Hively is about in cases like Allen against the city of Chicago and others since Hively. And third, although this court construes pro se pleadings liberally, it has warned time and time again that pro se litigants are subject to the same waiver standard as representative parties. Mr. Morgan, a question about our construction of 1926B. I take your point about Jennings, but I don't see any circuit that has actually hewed to 1926B's text. Do you think we could rein in sort of what other circuits have called offensive uses of 1926B to claim new customers or new geographic areas in a way that is consistent with our precedent? So it's certainly true, Judge Tableson, that some circuits have attempted to draw that sword versus shield distinction. The problem, from my view, is that is no more faithful to the text. I think that approach is equally unfaithful to the actual text of section 1926B. And it's certainly true that I think, Judge Scudder, I anticipated to get a question you asked in the earlier panel. Has any circuit in the country agreed with your reading about 1926B? And the answer is currently no circuit has reached that question and come down the way we do. I do think it's fair to call it a four to zero circuit lineup today. But both the Fourth and Eighth Circuits have acknowledged the real tension between the Jennings Water Rule and the statutory text. They just haven't had occasion to reach the issue yet. And the Fourth Circuit in Chesapeake Ranch Water, although it says it's reserving the question, it gets awfully darn close to deciding the question later in the opinion. But we certainly think it's a fair game to reach it. And when you do, the problem with the merits of DuPont's textual argument, I think, are pretty apparent. Their sort of world view is that the boundaries that matter under Section 1926B are the boundaries of the Madison Utility Department's service area. But the problem is the statute doesn't say anything about the boundaries of a service area. Section 1926B gets triggered if the jail is included, quote, within the boundaries of any municipal corporation or other public body. And we know the type of public body we're dealing with here is a municipal corporation. It's the city of Madison. You don't have to look any farther than the caption of their complaint to know that. And so the question under Section 1926B is whether the jail has been included within the city of Madison's boundaries. Okay, just to push back a little bit on your point that this is the only limitation that comes from the text is the one that you're proposing. I mean, earlier the sentence says, you know, what it's prohibiting is curtailment or a limitation of the Water Department's service area, right? And it does then say by two different means, neither of which we're in now. But I think if you look at those verbs, you know, curtail or limit, they do lend some support to the other circuit's observations that, you know, those are, you know, a shield but not a sword, right? Because they protect against someone else, like, curtailing or limiting what you're already doing, but they don't give you a right to offensively claim new customers. What I think those terms do is they say that we could, in fact, annex the jail as long as it doesn't curtail or limit their service. So if we annex the jail, and by the way, I think it's not hard to imagine why Congress drew the line where it did because granting a private franchise or annexing usually means you're giving someone else the exclusive right to serve that property. So you're literally shrinking the Rural Water Association's service area. But what the language Congress passed is doing is it's saying, look, if it makes sense for you to annex the jail, you can do that as long as you're not curtailing or limiting their service. So if we were to annex the jail without providing water service, and granted we presently are providing water service, but I think the statute says we could do that. That's what the curtailing and limiting language is doing, but it's also clear that you can curtail and limit in only one of two ways that count. And I don't quibble with them that the word annexation is not in the statute, but I don't know what else it means to include a property within a municipal corporation's boundaries other than annexation, and that's certainly what Jennings Water seemed to recognize. It acknowledges that the statute explicitly reaches annexation and private franchises. It just then went on to say, well, we've got this perceived congressional purpose, and so that will override sort of the narrow explicit text, and we just think that that's not – that may have been a viable approach to statutory construction in 1989. We just don't think it is any longer. The last point I would make on the lineup of the circuits is I would point to this court's decision that we cite in FTC against Credit Bureau Center, and the court there obviously acknowledges that it's a big lift to correct a statutory construction holding. And the court says, but it's equally important that we are faithful to the statutes Congress actually wrote by correcting previous errors if we perceive them, especially when intervening Supreme Court decisions on analogous issues cause us to think that we were wrong. I think we have a long history of Supreme Court decisions that suggest that that purposivist approach from Jennings Water isn't viable anymore. And FTC versus Credit Bureau Center says that's even so when correcting our error would upset a consensus among the circuits. Are there no other questions? Okay. Mr. Morgan, thank you. We'll hear from Mr. McGrath. You're here for Jefferson County, correct? That's correct, yes. Patrick McGrath on behalf of Jefferson County. I've asked for just a few minutes to address just one issue that applies only to the county. The county as a whole agrees with the city's arguments and backs the city's arguments, has joined the city's arguments in briefing. But there is one additional argument that we have made, which in our opinion is a spur of this offensive use of 1926B, and that is its application to a customer, which is all Jefferson County is in this case. As we've talked about quite a bit so far, 1926B, it specifically outlines just two different circumstances under which limitation or curtailment is not allowed, and that is with the inclusion within the boundaries of a municipal corporation or the granting of the private franchise. Jefferson County is not a water supplier. We don't supply water. We're unlike DuPont and the City of Madison in that we're not supplying any water to anyone, we're not competing with anyone. The only thing that we are doing is acting as a water customer. We have literally no ability of expanding a municipal boundary. We have no ability of providing a private franchise. We cannot interfere with the 1926B rights of DuPont or, frankly, the City of Madison. We stand in the same position as any other customer would of any water utility. DuPont's reading of the statute and its use of 1926B to come after the county for liability purposes is such a strained use of the statute that it would apply to virtually any type of customer. So we could have a farmer who has a neighbor that is getting service from Madison, moves in, and decides to build a homestead and asks for water service from the same place that their neighbor is getting it, and DuPont, if they claim that they have the pipes in the ground or if they claim that they have the service area, would not only be able to take up their action under 1926B against the City of Madison, which they can argue about who is entitled to provide the service, they would be able to go after that farmer and say this person is also violating the statute. There is no case that has actually found that the customer can be included within the 1926 liabilities. The only case that has been cited so far is the Adams County case. That case does not actually reach this issue. While it's true that in that case the municipality who was purchasing the water supply was included as a customer, that case focused on an injunctive issue. The issue was whether or not an injunction in the contract between the municipality providing water service and the municipality receiving water service could be enjoined under 1926B. And for that reason, the receiving municipality was in fact included. But that case did not reach the issue of whether or not they can be held liable under the terms of 1926B as just a mere customer. It's our position that that is a broad extension of 1926B and offensive use of it that is certainly not encompassed within the language or within any case that has been cited by any of the parties. Thank you very much. Thank you, Mr. McGrath. Yes, Mr. Dick, you have almost three minutes left. Thank you, Your Honor. In the Madison's brief, they painted a picture, and it's based on this October 2020 email that's not attached to an affidavit or anything else. Let's set that all aside. The email, and they want to paint a picture of there's this question about whether DuPont can serve, and it's supposedly this big lingering question. Now, it's undisputed that DuPont can serve. It's a county road down to where they are. They already have a pipe going there. They already have a pipe on the jail property. There's not like a mountain in between. There's no question about whether, and their experts said our experts' opinion was reasonable. There's no engineering feat here. And this would be a good argument for the jury because we get to March 2021, and the county writes a letter to DuPont. They don't say word one about, oh, we're trying to figure out if you can serve us. Now they come to the board meeting at DuPont, and the DuPont board is clear. They didn't say we needed an implementation plan. They didn't say anything like that. This is fine for him to make this argument that, oh, there was this big question out there, but DuPont, our response to that is that's not true. There was no question ever about whether DuPont can run a pipe next to a county road. They can do it. They can undisputedly do it. There was no question about an implementation plan. That never came up at the board meeting. It's not in any of the correspondence. It's nowhere to be found. And so I can certainly see a closing argument that says, jury, this idea that there was some question about an implementation plan, that's something they came up with after the fact because you're not going to see it anywhere real time in the correspondence. And if it was really a question then, then why when DuPont wrote a letter in May of 2021 and said, we are your provider, why didn't they write back and say, we've already said you can serve us, and we have this question about your implementation plan. We don't see that anywhere. And so I would say this is something that was come up with during litigation, and it's not found anywhere in the record, and DuPont's view of the world is entirely consistent with all of the written correspondence, the meeting minutes. There was never any request for service. The argument that they have to literally be within the municipal boundaries would lead to a very strange result in Madison's argument on that. Did it surprise DuPont that the jail wanted water from DuPont? They never requested it. This whole thing just seems like it's like a fiction. Because what Mr. Morgan started with is, we were the ones supplying water during the construction period. And DuPont didn't think, well, when the construction period is over, that means the jail's going to open. They did, Your Honor. We better make sure our lines are big enough to serve the jail when it opens. We have a monopoly over water supply. They did, and they sent a letter. And it's almost like it's not you, but it's like your clients arguing, well, we're shocked that they wanted water from DuPont. Your Honor, I think once again this would be an argument for the jury, because DuPont's view of the world is they didn't want water from DuPont. They didn't want it. They got it from XYZ? They got it from Madison because it was cheaper. That's what the county meeting minutes, when they vote on it, they say we didn't get a rate. So the idea, and maybe I missed your question. No, you're okay. But what DuPont would say, what the board members have testified, what they would testify is they didn't want service from DuPont. They wanted cheaper water service. They never requested water service from DuPont because they wanted cheaper water. So the fiction I would say – Pay less or more. You're going to say I'd rather pay less. But the difference is that the city of Madison doesn't hold a legal monopoly. Correct, Your Honor. And when DuPont notified the county that they would receive service from DuPont, the county went for the cheaper rate, and that's what violates 1926. Okay. Mr. Dick, many thanks to you. I really appreciate it. Mr. Morgan, Mr. McGrath, your colleagues, we'll take the appeal under advisement. Thank you.